COMMONWEALTH of Pennsylvania, Appellee

v.

Cameron Shawn JACKSON, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 6, 2006.
Filed May 31, 2006.

Victoria H. Vidt, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Amy E. Constantine, Assistant District Attorney, Pittsburgh, for Com., appellee.

BEFORE: STEVENS, BENDER, JJ., and McEWEN, P.J.E.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Com-

mon Pleas of Allegheny County following Appellant's conviction on the charge of third-degree murder, 18 Pa.C.S.A. § 2502. On appeal, Appellant claims (1) the evidence was insufficient to support his conviction for third-degree murder, (2) the trial court erred in permitting the Commonwealth to introduce evidence of Appellant's prior bad acts, and (3) the trial court abused its discretion in sentencing Appellant. We affirm.

The evidence presented at trial established that [Appellant] and the victim, Dionne Scott, had a long-time romantic relationship and had two children together. [Appellant] had a history of assaulting Ms. Scott throughout their relationship and had violated numerous PFA orders obtained by Ms. Scott. In the evening of October 17, 2003, Ms. Scott, [Appellant], and Ms. Scott's brother-in-law, Reginald Hurt, were at Ms. Scott's home socializing, drinking, and smoking crack cocaine, while Ms. Scott's three (3) children, two of whom were fathered by [Appellant], were upstairs sleeping. Mr. Hurt eventually left, while [Appellant] remained with Ms. Scott. At some point in the early morning hours of October 18, 2003, an argument ensued between Ms. Scott and [Appellant]. [Appellant] grabbed Ms. Scott by the arms, threw her onto the couch, and said "the next time I go to jail, it is going to be for something good." (Trial Transcript p. 277). [Appellant] then sat down on a chair in the room and began to think about killing Ms. Scott. He then noticed the vacuum cleaner, grabbed the cord, wrapped it around Ms. Scott's neck, and strangled her until she was dead. [Appellant] then left the house, bought some crack cocaine and returned to Ms. Scott's house where he smoked it. He wrote a note addressed to Magistrate Alberta Thompson, which he left near Ms. Scott's body, and then went to the home of his cousin, Charlene Ramsey. He told Ramsey there had been an accident, he had fought with Ms. Scott, and he thought he might have killed her. [Appellant's] family subsequently called the police. [Appellant] was arrested and eventually confessed to killing Ms. Scott.
Trial Court Opinion filed 8/22/05 at 1–2.

¶ 2 Following a jury trial, Appellant was convicted of third-degree murder, and the trial court sentenced him to twenty years to forty years in prison. Appellant filed a timely motion to modify his sentence, which the trial court denied on December 9, 2004. This timely appeal followed.

¶ 3 By order entered on April 5, 2005, the trial court directed Appellant to file a Pa.R.A.P.1925(b) statement. On April 18, 2005, Appellant filed a timely Pa.R.A.P. 1925(b) statement contending the trial court erred in permitting the jury to view prejudicial photographs of the victim, the trial court erred in permitting the Commonwealth to offer evidence of Appellant's prior bad acts with the victim, and the trial court erred in permitting extensive expert testimony from Dr. Bennett Omalu regarding the cause of death since Appellant did not dispute that he killed the victim.[1] On May 3, 2005, and May 12, 2005, without leave of court, Appellant filed supplemental untimely Pa.R.A.P.1925(b) statements contending Appellant's sentence was manifestly excessive and an abuse of discretion, and the evidence was insufficient to support Appellant's conviction.[2] On August

---

1. Appellant has abandoned on appeal the issues concerning the introduction of the photographs and Dr. Omalu's expert testimony.

2. Appellant has provided no reason as to why his supplemental issues could not have been raised in his initial, timely Pa.R.A.P.1925(b) statement.

22, 2005, the trial court filed a Pa.R.A.P. 1925(a) opinion addressing the issues raised in all of Appellant's Pa.R.A.P. 1925(b) statements.

¶ 4 Before addressing the merits of the issues raised by Appellant, we must determine whether the issues have been properly preserved for our review. Rather recently, in *Commonwealth v. Castillo*, 585 Pa. 395, 888 A.2d 775 (2005), the Supreme Court reaffirmed the bright-line rule established in *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998), which requires waiver whenever an appellant fails to raise an issue in a court-ordered Pa. R.A.P.1925(b) statement. In *Castillo*, the Supreme Court determined that issues which are raised in an untimely Pa.R.A.P. 1925(b) statement will be deemed waived even if the trial court addresses the issues in its Pa.R.A.P.1925(a) opinion. The Supreme Court noted that this "system provides litigants with clear rules regarding what is necessary for compliance and certainty of result for failure to comply." *Castillo*, 585 Pa. at 402, 888 A.2d at 779–780.

▮▮▮ ¶ 5 In the case *sub judice*, Appellant filed a timely Pa.R.A.P.1925(b) statement and two untimely supplemental statements without leave of court. Appellant's second appellate issue, in which he alleges the trial court erred in permitting evidence of his prior bad acts, was raised

in his initial, timely Pa.R.A.P.1925(b) statement. However, Appellant's first and third appellate issues, in which he challenges the sufficiency of the evidence supporting his conviction and the discretionary aspects of his sentence, were not raised in his initial, timely Pa.R.A.P. 1925(b) statement. Rather, Appellant attempted to preserve the issues by raising them in his untimely supplemental statements, which were filed without leave of court. In light of the Supreme Court's decision in *Castillo*, we conclude Appellant's first and third appellate issues have been waived pursuant to *Lord* and its progeny and only the issue relating to the evidence of Appellant's prior bad acts, which was included in Appellant's initial, timely Pa.R.A.P.1925(b) statement, has been preserved.[3] We specifically hold that *Castillo's* prohibition against the filing of untimely Pa.R.A.P.1925(b) statements extends to the filing of untimely supplemental Pa.R.A.P.1925(b) statements without leave of court.

▮▮▮ ¶ 6 Regarding the evidence of Appellant's prior bad acts, Appellant contends it was improper for the trial court to permit several police officers to testify about the pattern of domestic abuse which existed between Appellant and the victim[4] and Appellant's repeated violation of numerous Protection From Abuse (PFA) orders.[5] Specifically, Appellant contends

**3.** We recognize that, in addition to raising various waived discretionary aspects of sentencing claims, Appellant suggests on appeal that he was denied due process since the sentencing guidelines include a 20-year sentence at the top end of the minimum term of the standard sentence for third-degree murder regardless of a defendant's prior record score. This very narrow issue, which has arisen only in the context of sentencing for third-degree murder, has been rejected previously by this Court in *Commonwealth v. Pittman*, 737 A.2d 272 (Pa.Super.1999), which is directly on point.

**4.** A review of the testimony cited by Appellant reveals that the police officers consistently testified they were dispatched to the parties' residence for domestic disputes, and each time, upon arrival, they discovered the victim had been injured by Appellant. N.T. 8/30/04 at 55–57, 60–62, 90–92, 94–99, 100–103, 66–69, and 74–80.

**5.** We note that, prior to trial, the Commonwealth filed notice of its intent to introduce evidence of the prior bad acts at issue in this appeal. Specifically, the Commonwealth indicated it was going to present evidence of the

that evidence relating to the parties' history of domestic abuse and prior PFA orders was improper since Appellant readily admitted he killed the victim and the only reason the Commonwealth offered the evidence was to prove Appellant's propensity for criminal behavior. We find no merit to this claim.

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

*Commonwealth v. Drumheller,* 570 Pa. 117, 135, 808 A.2d 893, 904 (2002) (quotation and quotation marks omitted).

> It is axiomatic that evidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes. This rule is not without exception, however. Evidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character. It is well-established that reference to prior criminal activity of the accused may be introduced where relevant to some purpose other than demonstrating defendant's general criminal propensity. Thus, evidence of other crimes may be introduced to show

> (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan; and (5) identity. The evidence may also be admissible to impeach the credibility of a testifying defendant; to show that the defendant has used the prior bad acts to threaten the victim; and in situations where the bad acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development. In order for evidence of prior bad acts to be admissible as evidence of motive, the prior bad acts must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances.

*Commonwealth v. Melendez–Rodriguez,* 856 A.2d 1278, 1283 (Pa.Super.2004) (quotation marks and quotation omitted). "Furthermore, evidence of prior abuse between a defendant and a homicide victim tending to establish motive, intent, malice, or ill will is generally admissible." *Commonwealth v. Passmore,* 857 A.2d 697, 711 (Pa.Super.2004) (citation omitted). Moreover, the appellate courts have held that there is no set express time limitation on when evidence of prior abuse becomes inadmissible. *See Drumheller, supra; Commonwealth v. Lilliock,* 740 A.2d 237 (Pa.Super.1999).

¶ 7 Here, the evidence established that, since 1993, police officers responded to the parties' residence for numerous incidents where Appellant had beaten the victim, several times in violation of an existing PFA order. The evidence suggests that the abuse by Appellant of the victim continued to escalate until Appellant ultimate-

---

parties' history of domestic abuse and Appellant's repeated violation of numerous PFA orders. In response, Appellant filed a motion *in limine* expressly seeking to exclude the evidence. Following a lengthy pre-trial hear-

ing, the trial court denied Appellant's motion *in limine* and evidence relating to the pattern of domestic abuse was introduced at trial via several police officers.

ly murdered the victim. The challenged evidence shows the chain or sequence of events which formed the history of the case, is part of the natural development of the case, and demonstrates Appellant's motive, malice, intent, and ill-will toward the victim. Therefore, the trial court did not err in permitting the evidence to be introduced at trial.

¶ 8 Affirmed.

¶ 9 McEWEN, P.J.E. FILES A CONCURRING STATEMENT.

¶ 10 BENDER, J. JOINS THE OPINION BY STEVENS, J. AND THE CONCURRING STATEMENT BY McEWEN, P.J.E.

CONCURRING STATEMENT BY McEWEN, P.J.E.:

¶ 1 Since the author of the majority Opinion has provided a careful and perceptive analysis, I hasten to join the decision of the majority to affirm the ruling by the trial judge which permitted the admission of evidence of appellant's prior bad acts. I further share the view of the majority that the record makes clear that appellant's supplemental Rule 1925(b) statements,[6] in which he sought to raise challenges to the sufficiency of the evidence and to the sentence imposed by the trial judge, were filed without leave of the trial court. I am inclined, however, to complement that holding by observing that the strict view espoused by the Pennsylvania Supreme Court in *Commonwealth v. Castillo*, 585 Pa. 395, 888 A.2d 775 (2005), should not be construed as removing all discretion from trial courts to grant permission to file supplemental Rule 1925(b) statements.

¶ 2 I am impelled to the further observation that even if we were to reach the merits of the questions which have been deemed waived, there is no basis for this Court to afford the relief appellant seeks since (1) the evidence firmly supports the verdict of the distinguished Judge Donna Jo McDaniel, who presided as the fact-finder in the nonjury trial, and (2) the sentence imposed fell within the standard range of the sentencing guidelines. *See generally: Commonwealth v. Kimbrough*, 872 A.2d 1244 (Pa.Super.2005), *appeal denied*, 585 Pa. 687, 887 A.2d 1240 (2005).